IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| SHEILA BELL, *et al.* | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-116 |
| | § | |
| | § | |
| CHERYL TRIPLETT, *et al.* | § | |

## REPORT AND RECOMMENDATION

Before the Court for the third time in as many years is an action brought by Plaintiffs against a variety of state officials.  The instant suit, however, adds an insurance company and Plaintiffs' plumber, "Mr. Rooter," as Defendants.  Defendants Dr. James Lukefahr, Dr. Gayani Silva, and Leann Stubbs have filed a Motion to Dismiss, and Plaintiffs have responded.  Having carefully reviewed the Complaint and the parties' briefs, the Court submits its Report and Recommendation to the District Court.

## Background

As the Court has explained in earlier Reports and Recommendations, Plaintiffs complain of alleged violations that stem from a custody dispute.  Plaintiffs Sheila Bell and Christopher Bell are the parents and/or step-parents of six children.  The Defendants are primarily employees of the Texas Department of Protective and Regulatory Services ("TDPRS"), the University of Texas Medical Branch ("UTMB") or are largely unrelated parties. In September, 1998, the TDPRS began investigating Plaintiffs following a report from UTMB regarding their son,

1

Christopher Bell.   Christopher, who was born prematurely in 1995, had been hospitalized multiple times by 1998, and UTMB was concerned Plaintiffs were not seeking proper medical care in a timely manner.   Plaintiffs' daughter, Anna Stasia, had also been diagnosed with a failure to thrive.  Plaintiffs failed to contact TDPRS until December, 1998, when Sheila Bell met with Defendant Triplett and agreed to an improved health care plan for Christopher.

On December 21, 2001, TDPRS received another referral when Plaintiffs' one-year-old son, Elijah, was admitted to Children's Hospital with severe respiratory failure.   Hospital staff suspected he had been sick for several days, an allegation Ms. Bell denied.   Elijah's rectal area revealed abnormalities which were diagnosed as including an anal tear, raising fears of sexual abuse.

Because of this possibility, Defendants King and McCarty, accompanied by Galveston Police officer Joey Quiroga, went to Plaintiffs' home to interview the remaining children. According to the Defendants' affidavits, Mr. Bell allowed them to enter the home.   Mr. Bell denied sexual abuse of any of the children and alleged that Elijah's stool was "too big" when he changed his diaper.   Son Christopher again appeared to be ill, and it was decided he should be brought to the hospital for examination.   Plaintiffs eventually agreed to a safety plan to have three of their children examined at UTMB.

The TDPRS received a third referral on December 23, 2001, alleging sexual abuse of all six children, abandonment of Elijah, and allegations that Ms. Bell had stated that God told her to hide her children from authorities.  This information was presented to Defendant Triplett, the TDPRS Program Director, who authorized the children's removal from Plaintiffs' home due to the risk of sexual abuse and abandonment.   Galveston police officers located the family on

2

December 27 and placed the children in protective care.

The next day, a suit for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship was filed in the 306th District Court of Galveston County.  Three suits in this Court followed.

## Discussion

Plaintiffs have filed a 240 page Complaint and multiple supplements to it.  After carefully reviewing these pleadings, the Court has determined that Plaintiffs have brought an action under 42 U.S.C. § 1983 for alleged violations of their rights under the First, Fourth, and Fourteenth Amendments, and that they also claim violations of the False Claims Act, and multiple state laws, including slander, conspiracy, fraud, the Whistleblower Act, and violations of the Texas Family Code. They also allege that HRH Insurance Company denied claims on their home in 1995 and 1998 and that "Mr. Rooter," a plumbing company, failed to repair damages in their house in 1995.

### The Constitutional Claims

In an earlier proceeding, the District Court determined that Plaintiffs' First and Fourteenth Amendment claims against Defendants Cheryl Triplett, Martha Livingston, Richard King, Cheryl McCarty, and Jack Lawrence were without merit and dismissed them with prejudice.  Plaintiffs now improperly allege the same claims against these Defendants and also assert them against all other Defendants.

Defendants argue, in part, that all of Plaintiffs' § 1983 claims are barred by the statute of limitations.  It is well settled that any claim under § 1983 for the deprivation of a constitutional right must be raised within the time limits that govern claims for personal injuries in the state of which the plaintiff is a resident.  *Owens v. Okure*, 488 U.S. 235, 240 (1989); *Hickey v. Irving I.S.D.*, 976 F.2d

980, 982 (5th Cir. 1992).  In Texas, such claims must be raised within two years of the date on which the plaintiff knew, or should have known, his rights had been violated.  *Zuliani v. Boardman*, 865 F. Supp. 382, 384 (W.D. Tex. 1994).  Plaintiffs have consistently alleged that their constitutional rights were violated on or around December 12 to December 23, 2001.  The instant suit was filed on February 18, 2005, well outside the two-year statutory period.  Plaintiffs do not argue that they are entitled to any tolling of the limitations period, and the Court finds no ground for extending the two-year framework.  All the claims alleged in this action were fully known to Plaintiffs well within the statutory period and could have been brought at an appropriate time.  As a result, all of Plaintiffs' § 1983 claims against all Defendants are barred by the statute of limitations.

The Court **RECOMMENDS** that Defendants' Motion be **GRANTED** on this point and that Plaintiffs' § 1983 claims be **DISMISSED WITH PREJUDICE**.  As such, the Court emphasizes to Plaintiffs that such claims <u>cannot be raised at any further point against these Defendants in federal or state court</u>.

<u>False Claims Act</u>

Plaintiffs also claim an array of vaguely-stated violations that appear to allege that Defendants have presented false Medicare/Medicaid claims to UTMB and presented other, unstated, false bills for payment.  Plaintiffs bring their claims under the False Claims Act ("FCA").  31 U.S.C. § 3730.  A private party may bring a civil action for a FCA violation.  *Id*. at § 3730(b)(1).  However, the action must be brought in the name of the Government and is subject to elaborate filing procedures.  *Id*. at § 3130(b)(2); *U.S. ex rel. Rodgers v. State of Arkansas*, 154 F.3d 865, 868 (8th Cir. 1998).  A FCA claim is also subject to the pleading standards of Fed.R.Civ.P. 9(b).  *U.S. v. Lockheed-Martin Corp*., 328 F.3d 374, 375 (7th Cir. 2003).  Plaintiffs have complied with none of these requirements.

4

The failure to comply with Rule 9(b) ordinarily requires re-pleading.  However, the failure to follow the procedural standards outlined by the statute requires the dismissal of a FCA claim.  *White v. Apollo Group*, 241 F. Supp.2d 710, 714 (W.D. Tex. 2003).

The Court therefore **RECOMMENDS** that Defendants' Motion be **GRANTED** on this issue and that Plaintiffs' FCA claim be **DISMISSED WITHOUT PREJUDICE**.

Remaining State Law Issues

All remaining claims alleged in Plaintiffs' Complaint are based on Texas state law.  Although Plaintiffs appear to claim they have brought an action under an alleged federal Whistleblower Act, no such statute exists.  Such claims are brought under the state Whistleblower Act.  Tex. Gov. Code § 554.002.

Defendants attack all of Plaintiffs' state law actions in a variety of grounds.  The Court need not reach such arguments, however, because the dismissal of the § 1983 and FCA claims removes the Court's subject matter jurisdiction over all remaining issues in this case.  Federal courts have jurisdiction over state-law claims under the limited circumstances outlined in 28 U.S.C. § 1367(a).  Under § 1367(c), however, a court may decline to exercise its supplemental jurisdiction over state-law claims when it has dismissed all those  over which it has original jurisdiction.  Federal courts have wide discretion to decide whether or not to retain jurisdiction over state claims when all federal claims have been dismissed.  *Noble v. White*, 997 F.2d 797, 799 (5th Cir. 1993); *Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1018 (5th Cir. 1993).  Having recommended the dismissal of all other issues in this case, the Court believes the state-law claims can more appropriately be brought in state court.

The Court therefore **RECOMMENDS** that all state-law claims be **DISMISSED WITHOUT PREJUDICE**.

## Conclusion

For all the reasons stated above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss (Instrument No. 18) be **GRANTED IN PART** and that Plaintiffs' Original Complaint and Supplements (Instruments Nos. 1, 4, 5 & 6) be **DISMISSED.**

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **October 28, 2005**, in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections **SHALL** be mailed to the <u>Clerk's Office in Galveston at P.O. Drawer 2300, Galveston, Texas 77553</u>. **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____11th_____ day of October, 2005.

_____

John R. Froeschner
United States Magistrate Judge